UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BOSTON ARCHDIOCESAN ) <br> TEACHERS' ASSOCIATION ) <br> ) <br> V. ) <br> ) <br> ARCHDIOCESAN CENTRAL HIGH ) <br> SCHOOLS, INC., ARCHBISHOP SEAN P. ) <br> O'MALLEY AS A CORPORATION SOLE, ) <br> THE ROMAN CATHOLIC ARCHDIOCESE ) <br> OF BOSTON, NORTH CAMBRIDGE ) <br> CATHOLIC HIGH SCHOOL, INC., ) <br> CATHEDRAL HIGH SCHOOL, INC., ) <br> MATIGNON HIGH SCHOOL, INC., POPE ) <br> JOHN XXIII HIGH SCHOOL, INC., BISHOP ) <br> FENWICK HIGH SCHOOL, INC., ) <br> CARDINAL SPELLMAN HIGH SCHOOL, ) <br> INC., MARIAN HIGH SCHOOL, INC., ) <br> AND ARCHBISHOP WILLIAMS HIGH ) <br> SCHOOL INC. ) | DOCKET NO. 04-11197MLW |

**MEMORANDUM OF REASONS IN SUPPORT OF MOTION TO DISMISS
PURSUANT TO F.R.C.P. 12(b)(1),(2),(3) and (6)**

Now come the Defendants Archbishop Williams High School, Inc., Bishop Fenwick High School, Inc., Cardinal Spellman High School, Inc., Cathedral High School, Inc., Marian High School, Inc., Matignon High School, Inc., North Cambridge Catholic High School, Inc., Pope John XXIII High School, Inc., and Archdiocesan Central High Schools, Inc., pursuant to F.R.C.P. 12(b)(1), (2),(3) and (6) and the Local Rules of the U.S. District Court for the District of Massachusetts and hereby submit this Memorandum of Reasons in support of the Motion to Dismiss filed herewith by these Defendants.

As an introductory matter, although the various Defendants filing this Memorandum of Reasons are all separately incorporated and legally unrelated to one another, they have filed this document jointly for the ease of the Court and to avoid unnecessary filing of repetitive documents. The joint filing of this Memorandum and the underlying Motion To Dismiss is not intended to signify or evidence any kind of admission with respect to allegations that the various Defendants are interrelated.

Although the Motion To Dismiss relies upon, among other things, F.R.C.P. 12(b)(6), should the Court determine that such motion is to be treated as a Motion For Summary Judgment, the Defendants herein request that they be allowed to conduct discovery and, thereafter, supplement the Motion prior to any decision thereon as a Motion For Summary Judgment.

I. **Federal Rule of Civil Procedure 12(b)(1) and (6). The United States District Court Lacks Subject Matter Jurisdiction Over This Case and as such, the Complaint fails to state a claim upon which this Court could properly grant relief.**

   A. **The National Labor Relations Act and its amendments do not bring teachers in church-operated schools within the jurisdiction of the National Labor Relations Board.**

In its Complaint, the Plaintiff Boston Archdiocesan Teachers Association (hereinafter, the "Plaintiff", or the "Association"), relies upon the so-called Labor Management Relations Act of 1947 (hereinafter, the "LMRA"), found at 29 U.S.C. §§ 141-197 as grounds for filing the instant action in the United States District Court. Specifically, the Complaint relies upon Section 301 of the LMRA and states that "[J]urisdiction is conferred by 29 U.S.C. 185(a), (b), and (c), which is not dependent on an amount in controversy." Complaint, ¶ 2.

2

Section 101 of the LMRA makes it abundantly clear that the LMRA is an amendment to the National Labor Relations Act (hereinafter, the "NLRA"). The Plaintiff's effort to cherry pick the LMRA and, in isolation, argue that it confers subject matter jurisdiction in the instant case is an attempt to end run the precedent which exists precluding application of the NLRA and its amendments to church-operated schools. The Defendants herein urge that the LMRA must be viewed in the overall continuum of the development of federal labor law. The NLRA or the Wagner Act of 1935, was amended in 1947 by the Taft-Hartley Amendments (LMRA), and again in 1959 by the Landrum-Griffin Amendments, and yet again in 1974. Less comprehensive, but no less important amendments have also occurred from time to time. Suffice it to say, the LMRA cannot be divorced from the NLRA, which it amended, and serve as an island of jurisdiction untouched by the waters of the surrounding national labor law. U.S. Supreme Court precedent relating to the NLRA is instructive on the issues raised herein and should control.

The United States Supreme Court addressed very directly the question that is truly at the core of the instant case. Specifically, in <u>National Labor Relations Board vs. The Catholic Bishop of Chicago, et al.</u>, 440 U.S. 490, 99 S.Ct. 1313 (1979), the Court held that in view of the fact that the exercise of jurisdiction by the National Labor Relations Board (hereinafter, the "Board") over teachers in church-operated schools would implicate the guarantees of the religion clauses of the First Amendment and in view of the absence of a clear expression of Congress' intent to bring teachers in church-operated schools within the jurisdiction of the Board, the National Labor Relations Act did not authorize the Board to exercise jurisdiction over the lay faculty members at the church-

operated schools. Reliance by the Plaintiff on the provisions of the LMRA, an amendment to the NLRA - which has been determined inapplicable to those such as the Plaintiff, is a fatal flaw.

In reaching its conclusion, the Catholic Bishop Court examined the NLRA and its legislative history, **including the LMRA** and later amendments. In pertinent part, the Court stated, "[O]ur examination of the statute and its legislative history indicates that Congress simply gave no consideration to church-operated schools." Id., at 504, 99 S.Ct. 1313, 1321. In arriving at this determination, the Court pointed out that the LMRA amendments, which included creating an exception to the definition of employer for nonprofit hospitals, were accompanied by some discussion of the scope of the Board's jurisdiction but that the consensus was that nonprofit institutions in general did not fall within the Board's jurisdiction because they did not affect commerce. Id., *citing* legislative history, citations omitted. The Court further noted that the 1959 amendments made no changes to the definition of employer and the 1974 amendments removed the exemption of nonprofit hospitals. Id., at 505, 99 S.Ct. 1313, 1321. Having considered this progression of the NLRA, and having specifically referenced the LMRA as a component of the NLRA, the Court opined:

> The absence of an "affirmative intention of the Congress clearly expressed" **fortifies our conclusion that Congress did not contemplate that the Board would require church-operated schools to grant recognition to unions as** bargaining agents for their teachers. (emphasis added).

Id., at 506, 99 S.Ct. 1322.

The Court was satisfied that the record before it afforded "abundant evidence" that an exercise of jurisdiction over teachers in church-operated schools would "implicate the

4

guarantees of the Religion Clauses. As such, in the absence of a clear expression of Congress' intent to bring such teachers within the jurisdiction of the board, the Court declined "to construe the Act in a manner that could in turn call upon the Court to resolve difficult and sensitive questions arising out of the guarantees of the First Amendment Religion Clauses." Id., at 507, 99 S.Ct. 1322. It is clear from this decision that the federal labor laws, most commonly referred to in the collective as the NLRA but including specifically the LMRA, are inapplicable to church-operated schools such as those involved in the instant case as evidenced by the Court's refusal to extend NLRB jurisdiction to such schools. Reliance in any way on any element or provision of the federal labor law in order to establish subject matter jurisdiction in the instant case should result in its dismissal for lack of subject matter jurisdiction.

### B. Constitutional considerations compel a finding of lack of subject matter jurisdiction in this case.

It is clear from the Catholic Bishop decision that the Supreme Court recognized serious constitutional concerns attendant to the possible exercise of jurisdiction by the NLRB over church-operated schools and their lay faculty.

> The values enshrined in the First Amendment plainly rank high "in the scales of our national values." In keeping with the Court's prudential policy it is incumbent on us to determine whether the Board's exercise of its jurisdiction here would give rise to serious constitutional questions. If so, we must identify "the affirmative intention of Congress clearly expressed" before concluding that the Act grants jurisdiction.

Catholic Bishop, *supra*, at 501. As indicated previously herein, the Court did not find such a statement of clear intent and concluded that the Act did not confer jurisdiction. Before reaching this ultimate conclusion, the Court identified the likely problems that would ensue from involvement of the NLRB in matters involving church-operated

5

schools. The Court noted, for example, that jurisdiction by the NLRB would go beyond merely resolving factual issues, such as in the disposition of charges of unfair labor practices.

> The resolution of such charges by the Board, in many instances, will necessarily involve inquiry into the good faith of the position asserted by the clergy-administrators and its relationship to the school's religious mission. It is not only the conclusions that may be reached by the Board which may impinge on rights guaranteed by the Religion Clauses, but also the very process of inquiry leading to findings and conclusions.

Id., at 502. The Court pointed out that inevitably the Board's inquiry will implicate sensitive issues that open the door to conflicts between clergy-administrators and the Board, or conflicts with negotiators for unions. Quoting from its own opinion in Lemon v. Kurtzman, 403 U.S. 602, 91 S.Ct. 2105 (1971) (a case involving aid to parochial schools), the Court stated, "Parochial schools involve substantial religious activity and purpose. The substantial religious character of these church-operated schools gives rise to entangling church-state relationships of the kind the Religion Clauses sought to avoid." Catholic Bishop, *supra*, at 503.

Recognizing the fundamental difference which exists in church-operated schools as opposed to other secular industries, the Court pointed out that "We see no escape from conflicts flowing from the Board's exercise of jurisdiction over church-operated schools and the consequent serious First Amendment questions that will follow." Id., at 504.

In the face of these conclusions that the exercise of jurisdiction would implicate the guarantees of the Religion Clauses, the Court culled through the NLRA's legislative history, including debate and discussion accompanying the various amendments thereto including the LMRA, and concluded that there existed no manifest intent of Congress to

6

bring church-operated schools within the reach of the Act or within the jurisdiction of the specialized administrative agency charged with enforcing the Act.

The Catholic Bishop decision issued closely on the heels of the decision of the U.S. District Court for the Eastern District of Pennsylvania in Caulfield v. Hirsch, et al. In Caulfield, the Court reached the conclusion that the exercise of jurisdiction by the NLRB over church-operated schools was unconstitutional. In pertinent part, the Court stated:

> The Supreme Court expressed this concern for the zealous protection of religious liberty, although in a concededly different context, when it suggested that the First Amendment radiates …a spirit of freedom for religious organizations, an independence from secular control or manipulation – in short, power to decide for themselves, free from state interference, matters of church government, as well as those of faith and doctrine. Kedroff v. Saint Nicholas Cathedral, 344 U.S. 94, 116 (1952). In my mind, this "spirit" does not encompass the regulation of pervasively religious schools by an Act whose purpose was the alleviation of industrial strife.

Caulfield v. Hirsch, et al., 1977 WL 15572(E.D.Pa.), 95 L.R.R.M. (BNA) 3164.

There is no intent manifested in connection with the LMRA that it was intended to bring within its coverage church-operated schools and their lay faculty. The same risk of entangling church-state relationships that the Catholic Bishop Court was concerned about involving the NLRB would be equally present here if this Court were to entertain jurisdiction over this case and compel recognition of the Plaintiff labor association and impose recognition and bargaining obligations on non signatory employers such as those identified herein or by imposing such obligations on signatories but beyond the term of the agreement in question. Moreover, as pointed out previously, it would be illogical to

7

allow for jurisdiction under the LMRA while at the same time remaining faithful to the precedent established by Catholic Bishop.

As was aptly pointed out in a decision involving religiously affiliated homeless shelters, "Government has more than enough legitimate opportunities to exercise its police power than to squander that power in the needless regulation of religious organizations providing the most fundamental of human needs, shelter and care…"Market Street Mission v. Bureau of Rooming and Boarding House Standards, 110 N.J. 335, 344 (1988 N.J. Supreme Court). The same could be said with regard to the involvement of the Court in matters involving the provision of educational services by church-operated schools. Such an exercise would be anything but legitimate and would give rise to serious constitutional questions.

### C. It would be illogical to allow for the exercise of jurisdiction under the LMRA when the law is clear that the NLRA is not applicable to church-operated schools.

As outlined herein, the gravaman of the Catholic Bishop decision was that the NLRA does not serve as a basis for the exercise of jurisdiction by the NLRB over church-operated schools. The Court noted that there was no clear expression of intent to do so by Congress and that it was virtually inescapable that an exercise of jurisdiction would implicate the First Amendment Religion Clauses. This is not an isolated expression of the role of the administrative agency, but instead signals the clear policy of our national labor law that it does not apply to church-operated schools.

The fact that the NLRB has no role to play with regard to lay faculty in church-operated schools affirms this policy which compels a hands off approach to such employers. In referring to the seminal role that the NLRB plays in enforcing national

labor policy, the United States Supreme Court stated that Congress has "entrusted administration of the labor policy for the Nation to a centralized administrative agency, armed with its own procedures, and equipped with its specialized knowledge and cumulative experience." San Diego Building Trades Council vs. Garmon, 359 U.S. 236, 243, 79 S.Ct. 773, 778 (1959). The fact that Catholic Bishop excluded the NLRB from involvement in matters affecting church-operated schools is proof that they were intended to be beyond the reach of the federal labor laws.

There is ample authority which states that the substantive law to be applied in suits under § 301 is federal law, which the courts "must fashion from the policy of our national labor laws." Textile Workers Union of America v. Lincoln Mills of Alabama, 353 U.S. 448, 456, 77 S.Ct. 912, 918 (1957). It is axiomatic that interpretations of the National Labor Relations Act by the United States Supreme Court are at the core of the policy of our national labor laws. Accordingly, the substantive law to be applied in the instant case must take into account the Catholic Bishop holding that the NLRA is inapplicable to church-operated schools. By extension, the LMRA, which amended the NLRA, which was in existence at the time that the Catholic Bishop Court made its ruling, and which was specifically mentioned and contemplated by the Court, must be held to be inapplicable to church-operated schools such as those involved in this case. As such, § 301 does not confer subject matter jurisdiction in the instant case.

### D. There is no doubt that Congress intended the LMRA to be a part of the larger national labor policy embodied in the NLRA.

Although it seems self evident that the LMRA is part of the larger NLRA scheme, the fact that the Plaintiff relies upon the LMRA even in the face of Catholic Bishop, compels further discussion herein.

9

Much attention has been devoted by the various Federal courts to the question of whether § 301 of the LMRA confers a cause of action independent of any action available at the NLRB. It appears settled that the availability of an alternative remedy before the NLRB does not prevent a suit for enforcement of a collective bargaining agreement under § 301. It has been said that the federal district court has concurrent jurisdiction with the Board in the area of contract enforcement. *See*, *e.g.*, Chicago Area Vending Employers Association v. Local Union No. 761, 564 F.Supp. 1186, 1192 (1983), *citing* Smith v. Evening News Association, 371 U.S. 195, 83 S.Ct. 267 (1962), Carey v. Westinghouse Electric Corp., 375 U.S. 261, 84 S.Ct. 401(1964). This line of authority recognizes the fact that when Congress enacted the LMRA it refused to specifically provide that contract violations amounted necessarily to unfair labor practices as contemplated by the NLRA. and that it was possible that certain acts could amount to both a contract violation and an unfair labor practice. None of these cases, however, stand for the proposition that § 301 provides a remedy where the NLRA in general is not applicable to the employer in question. Stated another way, the mere fact that both remedies exist concurrently does not mean that one can utilize § 301 to accomplish jurisdiction where it is clear that the NLRA does not otherwise apply.

The LMRA and the NLRA are inextricably entwined. They do not sit on separate footing, independent of one another. Instead, the LMRA was an attempt to expand certain elements of the NLRA. Ironically, one of the fundamental reasons for passage of the LMRA amendments to the NLRA was to establish a federal cause of action through which a labor union or association could be sued. Because many labor associations were unincorporated entities, suing them under the laws of most states was virtually impossible

10

because there was no collective entity to sue. § 301(b) provides the procedural remedy lacking at common law. Textile Workers Union of America, *supra*, at 451.

One need look no further than the many decisions regarding the statue of limitations applicable to § 301 claims in order to see that the federal courts have routinely viewed the NLRA and the LMRA as codependent elements of the national labor law policy. It has been repeatedly held that the statute of limitations applicable to hybrid § 301/unfair representation claims is the six month statute of limitations applicable to unfair labor practice charges provided for in the NLRA. *See, e.g.*, DelCostello v. International Brotherhood of Teamsters, 462 U.S. 151, 164, 103 S.Ct. 2281, 2290 (1983); Vance v. Lobdell-Emery Manufacturing, 932 F.Supp. 1130 (1996); Miller v. Jeep Corporation, 774 F.2d 111 (1985).

The District Court for the Southern District of New York described the interrelatedness of the LMRA and the NLRA when it rejected the argument that § 301 was an unconstitutional extension of the jurisdiction of the federal court:

> The spirit as well as the letter of the Act makes it clear that in setting up the machinery for the negotiation of collective bargaining agreements, their execution, effect and enforcement, Congress recognized and regarded the observance and enforcement of such contracts as a matter of federal concern incident to the regulation of commerce, and intended to create a right in each of the parties to such contracts to the observance and the performance thereof by the other. Section 301(a) of the Act, authorizing suits for violation of such agreements, would be meaningless on any other hypothesis and would attribute to Congress the anomalous action of providing for remedy and a forum in which to enforce it, without creating a right to remedy or to enforce.

Wilson v. United Packinghouse Workers of America, et al., 83 F.Supp. 162, 165 (1949).

11

The clear message of the Wilson court was that the whole rationale for recognizing the existence of a § 301 right of action is posited on the existence at the most basic level of rights provided for and protected by the NLRA and carried out by the NLRB. In the instant case, such a fundamental condition precedent does not exist in light of the Catholic Bishop holding that the NLRA does not confer jurisdiction of the NLRB over lay teachers at church-operated schools, and the derivative conclusion that such teachers do not enjoy the protection of the NLRA.

The relationship between the LMRA and the NLRA was highlighted in the legislative history of the LMRA as recounted by the U.S. Supreme Court. In a Senate Report regarding the LMRA, it was stated:

> We feel that the aggrieved party should have a right of action in the Federal courts. Such a policy is completely in accord with the purposes of the Wagner Act which the Supreme Court declared was 'to compel employers to bargain collectively with their employees to the end that an employment contract binding on both parties should be made... .'

Textile Workers of America, *supra*, at 453, *citing* Senate Report, at 15.

Implicit in this summary of the legislature's intent was a recognition that the purpose and function of the LMRA was intended to be part and parcel of the national labor law policy embodied in the NLRA (Wagner Act) and its judicial interpretations. The LMRA does not stand alone to confer subject matter jurisdiction when the NLRA is determined inapplicable to the same employer.

> **E. If the Court were to exercise subject matter jurisdiction pursuant to § 301 and proceed thereafter to grant the requested relief, the Court would necessarily create a circumstance giving rise to a conflict with the holding of the U.S. Supreme Court in Catholic Bishop.**

The first three Counts of the Plaintiff's Complaint allege that the Defendants Archbishop Williams High School, Inc., Bishop Fenwick High School, Inc., Cardinal Spellman High School, Inc., Cathedral High School, Inc., Marian High School, Inc., Matignon High School, Inc., North Cambridge Catholic High School, Inc., and Pope John XXIII High School, Inc. are alter egos of the Defendants Archdiocesan Central High Schools, Inc., Archbishop Sean P. O'Malley and the Roman Catholic Archdiocese of Boston, and as such are bound by the terms of a collective bargaining agreement between the Plaintiff and the Defendant ACHS, Inc.. The first three counts further allege that the Defendants ACHS, Inc., Archbishop Sean P. O'Malley, and the Roman Catholic Archdiocese of Boston are in breach of the collective bargaining agreement by virtue of their refusal to require its "successor" to recognize BATA as the exclusive bargaining representative and by virtue of their refusal to bargain with BATA.[1] Among the remedies sought in connection with these first three counts are that the various defendants be required to recognize and bargain with the Plaintiff BATA. (The fourth count, which is grounded exclusively in state law, will be addressed later herein. Suffice it to say, however, that in the event of a dismissal of the first three counts of this action on the basis of subject matter jurisdiction, the fourth count must also be dismissed as it cannot stand alone in federal court.). Matters of recognition and bargaining over terms and conditions of employment are fundamental concepts of labor law. However, when these fundamental areas become the subject of dispute between employers and labor organizations, the disputes are settled primarily in the arenas of administrative agencies,

---

[1] It should be noted here that the collective bargaining agreement in question is between the Defendant Archdiocesan Central High Schools, Inc. and the Boston Archdiocesan Teachers Association. Neither Archbishop Sean P. O'Malley nor the Roman Catholic Archdiocese of Boston is a party to the collective bargaining agreement which expires on August 31, 2004.

13

such as the NLRB or state labor boards. The Plaintiff's attempt to utilize the LMRA as a means to establish jurisdiction in the face of Supreme Court precedent holding that the NLRA does not confer jurisdiction of the NLRB over teachers in church-operated schools is illogical. Assuming arguendo that the Court were to grant the requested relief in connection with the first three counts, what would happen when the first dispute arose regarding whether or not a particular subject was to be considered a term and condition of employment over which negotiation is required? What would happen when the first issue of representation or accretion arose? What would happen if one of the parties engaged in an unfair labor practice? The United States Supreme Court has already concluded that the NLRB would be without jurisdiction to get involved to resolve the dispute. Massachusetts state law would not provide a remedy either. For this Court to allow the LMRA to serve as a source of jurisdiction leading to a remedy such as that sought by the Plaintiff would be tantamount to a finding that the NLRA applies to church-operated schools (clearly wrong) and would set in motion a process that would necessarily be frustrated in the end by virtue of the NLRB's lack of jurisdiction. This is a glaring example of the necessity that the Court consider the impact of the LMRA in the larger context of the national labor law policy embodied in the NLRA and its judicial interpretations. An exercise of subject matter jurisdiction on the basis of the LMRA would be error.

### F. § 301 of the LMRA cannot confer jurisdiction of the federal courts over claims involving defendants who were not signatories to the collective bargaining agreement in question.

The Defendants Archbishop Williams High School, Inc., Bishop Fenwick High School, Inc., Cardinal Spellman High School, Inc., Cathedral High School, Inc., Marian

High School, Inc., Matignon High School, Inc., North Cambridge Catholic High School, Inc., and Pope John XXIII High School, Inc. were not signatories to the collective bargaining agreement at issue in the instant action and the Plaintiff's Complaint does not allege that they were. It is clear from the plain language of § 301 that it is in the nature of an action to enforce the terms of a contract as between the signatories to the contract. A number of federal courts have confirmed this limited contract enforcement function when faced with claims under § 301. For example, in International Union United Mine Workers of America v. Covenant Coal Corporation, 759 F.Supp. 1204, the U.S. District Court for the Western District of Virginia concluded that the Court's power to fashion a body of federal common law was limited to contract enforcement and would not extend, for example to such causes of action as tortious interference claims against non signatories to the underlying collective bargaining agreement. 759 F.Supp. 1204, 1206, 1208 (1991). In so ruling, the Court noted that "It is axiomatic that only a party to a contract can violate the contract. A contract governs only the conduct of the parties who have agreed to its terms." Id., supra, at 1208. This result is consistent with a number of other decisions reached in a majority of circuits where the courts have rejected the extension of § 301 jurisdiction to claims in the nature of tortious interference as against non signatories to a contract. *See, e.g.,* Service, Hosp., Nursing Home & Pub. Employees Union Local No. 47 v. Commercial Property Servs., Inc., 755 F.2d 499 (6th Cir.), *cert. denied*, 474 U.S. 850, 106 S.Ct. 147, 88 L.Ed.2d 122 (1985); Carpenters Local Union No. 1846 v. Pratt-Farnsworth, Inc., 690 F.2d 489 (5th Cir.), *cert. denied*, 464 U.S. 932, 104 S.Ct. 335, 78 L.Ed.2d 305 (1983); Loss v. Blankenship, 673 F.2d 942 (7th Cir.1982);

Bowers v. Ulpiano Casal, Inc., 393 F.2d 424 (1st Cir.1968); Aacon Contracting Co. v. Association of Catholic Trade Unionists, 276 F.2d 958 (2d Cir.1960).

In United Food and Commercial Workers Union v. Quality Plus Stores, Inc., 961 F.2d 904(10th Cir. 1992) the United States Court of Appeals for the Tenth Circuit adopted this majority approach and held too that "section 301 does not establish subject matter jurisdiction for a federal common law claim of tortious interference against an entity that is not a signatory to the contract."

The First Circuit decision in Bowers is notable in that it illustrates the problem inherent in allowing actions under Section 301 to be entertained against non signatories to the underlying contract. As the Court pointed out, to allow such actions is akin to allowing a breach of contract action against the buyer of a house from a seller, knowing that the seller has broken his exclusive agency agreement with a broker. The extension of jurisdiction is illogical. Id., at p. 423.

In the instant case, the Plaintiff attempts to invoke the jurisdiction of the U.S. District Court by resort to Section 301 of the LMRA. However, as the cited authority reveals, such jurisdiction has been regularly determined to be confined to contract enforcement involving parties to a contract. As such, the Defendants Archbishop Williams High School, Inc., Bishop Fenwick High School, Inc., Cardinal Spellman High School, Inc., Cathedral High School, Inc., Marian High School, Inc., Matignon High School, Inc., North Cambridge Catholic High School, Inc., and Pope John XXIII High School, Inc. are beyond the reach of Section 301 jurisdiction because they were not signatories to the collective bargaining agreement in question. The Plaintiff seeks to cure this fatal flaw by alleging that these Defendants are merely alter egos of the Defendant ACHS, Inc., the

signatory to the collective bargaining agreement. A similar tactic was rejected by the U.S. District Court for the District of New York when it held in pertinent part that in order to state a claim against an employer for breach of a collective bargaining agreement, the complaint must allege that the employer was signatory to the collective bargaining agreement. The mere allegation the employer was an alter ego of a parent company which was a signatory the collective bargaining agreement is not sufficient as a matter of law. Cruz v. Robert Abbey, Inc., 778 F.Supp. 605, 610 (1991).

The United States Court of Appeals for the Fifth Circuit also rejected the notion that non signatories can nevertheless be brought within the reach of § 301 jurisdiction by virtue of conspiring to breach a contract between other parties. "A conspiracy to violate a collective bargaining agreement does not, without more, state a cause of action under section 301 sufficient to confer jurisdiction on a federal court. Carpenters Local Union No. 1846 v. Pratt-Farnsworth, et al., 690 F.2d 489, 502 (1983), *citations omitted.*

To the extent that the Plaintiff is relying upon Section 301 of the LMRA as a source of jurisdiction over the Defendants Archbishop Williams High School, Inc., Bishop Fenwick High School, Inc., Cardinal Spellman High School, Inc., Cathedral High School, Inc., Marian High School, Inc., Matignon High School, Inc., North Cambridge Catholic High School, Inc., and Pope John XXIII High School, Inc., the case against them must be dismissed for lack of subject matter jurisdiction as they are not signatories to the collective bargaining agreement which the Plaintiff seeks by this action to enforce.

> **G. Arguments that the Defendants Archbishop Williams High School, Inc., Bishop Fenwick High School, Inc., Cardinal Spellman High School, Inc., Cathedral High School, Inc., Marian High School, Inc., Matignon High School, Inc., North Cambridge Catholic High School, Inc., and Pope John XXIII High School, Inc. are alter egos of the Defendant ACHS, Inc. have no bearing on the underlying issue.**

Assuming, arguendo, that the Defendants Archbishop Williams High School, Inc., Bishop Fenwick High School, Inc., Cardinal Spellman High School, Inc., Cathedral High School, Inc., Marian High School, Inc., Matignon High School, Inc., North Cambridge Catholic High School, Inc., and Pope John XXIII High School, Inc. are in fact alter egos of the Defendant ACHS, Inc., a fact not conceded by the Defendants, such a conclusion would have no bearing on the underlying subject matter jurisdictional issue. Subject matter jurisdiction founded on § 301 of the LMRA is lacking as it relates to the Defendant ACHS, Inc. for the reasons stated previously herein. The national labor law policy includes the fundamental position that the NLRA is inapplicable to church-operated schools. The alter ego doctrine, itself largely a creation of the NLRB, is aimed at preventing an employer from evading its obligations under the NLRA by setting up what appears to be a new company, but is in reality a "disguised continuance" of the old one. *See, e.g.*, Carpenters Local Union No. 1846, *supra*, at 507. Such a deleterious motive cannot be assigned to the Defendants Archbishop Williams High School, Inc., Bishop Fenwick High School, Inc., Cardinal Spellman High School, Inc., Cathedral High School, Inc., Marian High School, Inc., Matignon High School, Inc., North Cambridge Catholic High School, Inc., and Pope John XXIII High School, Inc. in this case because, as noted repeatedly herein, there are no NLRA obligations to be evaded since church-operated schools are already recognized as being beyond the scope and control of the NLRA. There is no escaping the fundamental truth that the NLRA has been rendered inapplicable to any of the Defendants in this case by virtue of the Catholic Bishop decision of the United States Supreme Court.

### H. The exercise of supplemental jurisdiction over Count IV would be inappropriate in view of the Court's lack of subject matter jurisdiction over the remaining counts.

Count IV is based solely upon Massachusetts state law and is dependent upon an exercise of supplemental jurisdiction pursuant to 28 U.S.C. § 1367 in order to be brought within the jurisdiction of this Court. 28 U.S.C. § 1367 (c)(3) provides that the Court may decline to exercise supplemental jurisdiction if the district court has dismissed all claims over which it has original jurisdiction. The Defendants' motion has asked for the dismissal of the remaining claims on the basis of subject matter jurisdiction. If granted, that result would be grounds for the Court to refuse to exercise supplemental jurisdiction over Count IV. Moreover, even absent such a result, the exercise of supplemental jurisdiction may be declined if the claim raises a novel or complex issue of state law or the claim substantially predominates over the other claims. Both of these possibilities exist in this case and would support a declination of the exercise of supplemental jurisdiction.

### II.  Federal Rule of Civil Procedure 12(b)(2). The United States District Court Lacks Personal Jurisdiction Over This Case.

For the reasons stated herein, the Federal Court lacks subject matter jurisdiction in this case. Absent such jurisdiction, the Defendants are not properly within the personal jurisdiction of the Court. Moreover, because of the potential for involvement of canon law in this case, personal jurisdiction may be implicated.

### III.  Federal Rule of Civil Procedure 12(b)(3). The United States District Court Is The Improper Venue For This Case.

The Plaintiff relies on § 301(c) as a basis for venue in this case. For all of the reasons previously addressed herein, § 301 is inapplicable and does not confer jurisdiction in this

19

case. As such, it cannot be relied upon to establish venue in the instant case. The Plaintiff offers no other basis for venue.

                RESPECTFULLY SUBMITTED,
ARCHDIOCESAN CENTRAL HIGH SCHOOLS, INC., NORTH CAMBRIDGE CATHOLIC HIGH SCHOOL, INC., CATHEDRAL HIGH SCHOOL, INC., MATIGNON HIGH SCHOOL, INC., POPE JOHN XXIII HIGH SCHOOL, INC., BISHOP FENWICK HIGH SCHOOL, INC., CARDINAL SPELLMAN HIGH SCHOOL, INC., MARIAN HIGH SCHOOL, INC., AND ARCHBISHOP WILLIAMS HIGH SCHOOL INC.,
BY THEIR ATTORNEYS,

Sean P. Sweeney
BBO #56211
Murphy, Lamere, & Murphy, P.C.
Ten Forbes Road West
Braintree, MA 02185-9003
(781) 848-1850

Dated: July 14, 2004

## CERTIFICATE OF SERVICE

I, Sean P. Sweeney, Attorney for said Defendants, hereby certify that I have this day served copies of the foregoing documents on the Plaintiff and other Defendants by mailing, postage prepaid, directed to:

Kathryn Noonan, Esquire  
Terrence P. Noonan, Esquire  
Law Office of Kathryn Noonan  
1150 Walnut Street  
Newton, MA 02461  

Wilson D. Rogers, Jr.., Esquire  
Wilson D. Rogers, III, Esquire  
The Rogers Law Firm, P.C.  
One Union Street  
Boston, MA 02108  

Signed under the pains and penalties of perjury this 14th day of July, 2004.

Sean P. Sweeney

20