UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT
OF MASSACHUSETTS

BOSTON ARCHDIOCESAN
TEACHERS ASSOCIATION                        Docket No.: 04-11197 MLW

V.

ARCHDIOCESAN CENTRAL HIGH SCHOOLS, INC.,
ARCHBISHOP SEAN P. O'MALLEY AS A CORPORATION SOLE, THE ROMAN
CATHOLIC ARCHDIOCESE OF BOSTON, NORTH CAMBRIDGE CATHOLIC
HIGH SCHOOL, INC., CATHEDRAL HIGH SCHOOL, INC., MATIGNON HIGH
SCHOOL, INC., POPE JOHN XXIII HIGH SCHOOL, INC., BISHOP FENWICK
HIGH SCHOOL, INC., CARDINAL SPELLMAN HIGH SCHOOL, INC., MARIAN
HIGH SCHOOL, INC., AND ARCHBISHOP WILLIAMS HIGH SCHOOL, INC.,

## PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS

I.  Introduction
A. Present Posture of the case

The Defendants, Archdiocesan Central High Schools, Inc., North Cambridge Catholic High School, Inc., Cathedral High School, Inc., Matignon High School, Inc., Pope John XXIII High School, Inc., Bishop Fenwick High School, Inc., Cardinal Spellman High School, Inc., Marian High School, Inc., and Archbishop Williams High School, Inc., move for dismissal of the Complaint filed by the Boston Archdiocesan Teachers Association (BATA) pursuant to F.R.C.P. 12(b)(1), (2), (3), and (6). In essence Defendants claim that this Court lacks subject matter jurisdiction to hear this case and that BATA has failed to state a claim upon which relief can be granted; the additional grounds for dismissal flow from those alleged deficiencies. BATA contends these assertions are incorrect legally and that therefore Defendants' Motion to Dismiss must be denied.

BATA requests oral argument for this Motion.

1

B. Background

BATA, a union within meaning of the Labor Management Relations Act (the "Act" or "LMRA"), and ACHS, Inc., an employer within meaning of the Act, have been parties to uninterrupted collective bargaining agreements for at least the last 38 years. There is currently a collective bargaining agreement in effect. ACHS, Inc., maintains it is dissolving. BATA alleges that ACHS, Inc., has breached its union contract.

ACHS, Inc., maintains it is dissolving so that the eight high schools formerly under its control will be independent. Contrary to that assertion, as specifically alleged in the Complaint, the Archdiocese of Boston and its agents created 8 corporations while maintaining control over their operations. The property, product, staff, curricula, addresses, and final decision making authority for all these eight high schools will still reside with the Archdiocese of Boston and its agents, and thus, the eight "new" schools are alter egos and or successors of ACHS, Inc.

II.   Legal Discussion

A. The LMRA Confers Jurisdiction On this Court To Hear This Dispute.

Section 301 of the LMRA as codified at 29 U.S.C. §185(a) confers jurisdiction on this Court. It states:

> "Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to amount in controversy or without regard to the citizenship of the parties."

"An industry affecting commerce" is defined in 29 U. S. C. §152(7) as:

2

"The term 'affecting commerce' means in commerce, or burdening or obstructing commerce or the free flow of commerce, or having led or tending to lead to a labor dispute burdening or obstructing commerce or the free flow of commerce."

In section 2(2) of the Act, 29 U.S.C. 152(2), "employer" is defined as:

". . . any person acting as an agent of an employer, directly or indirectly, . . . ."

The plain, unambiguous language of §301 mandates jurisdiction over this case. All the necessary requisites for this Court to exert jurisdiction exist in the present case. There is an employer, ACHS, Inc., a union, BATA, and an allegation by BATA of a breach of contract by ACHS, Inc, and the eight newly created corporations. That is all the LMRA requires and that is clearly satisfied here. Even if Plaintiff had not plainly and clearly alleged the same in its Complaint, which it did, the Defendants do not contest any of those requisites to establishing jurisdiction. And the reason they do not is simple- they cannot. They are all employers within the meaning of the Act. BATA is a labor organization within the meaning of the Act. There is an extant collective bargaining agreement. And BATA is claiming that the contract has been breached. Thus jurisdiction is conferred.

Although Federal Courts are courts of limited jurisdiction, they are not so limited as to preclude BATA's case here. In order for this Court to grant Defendants' Motion, and deny BATA's claim, this court must read into the LMRA limitations that do not exist. Defendants ask this Court to redefine the jurisdictional language of §185 to preclude this case from being heard by linking the Court's jurisdiction to the grant of jurisdiction conferred upon the National Labor Relations Board by the NLRA. That limitation is nowhere in the language of the LMRA. There is no provision in the LMRA

3

that circumscribes this court's jurisdiction in circumstances like the present. To deny jurisdiction would be to blink at the reality of the plain language of the LMRA.

As the plain language of the statute compels jurisdiction Defendants' Motion should be denied.

B. The LMRA grants this Court jurisdiction, irrespective of the NLRA.

Although explicitly unstated in Defendants' Motion, the premise of its argument seems to be that this Court's jurisdiction is circumscribed by the NLRB's jurisdiction. Or put another way, if the NLRB does not have jurisdiction under the NLRA, then this Court similarly does not have jurisdiction, irrespective of the facially broad jurisdictional grant contained in §301 of the LMRA. That is patently incorrect.

First, Plaintiff is proceeding under the LMRA, not the NLRA. The LMRA contains different jurisdictional requirements, all of which have been met here as shown in the previous section. Second, Congress' grant of federal court jurisdiction in the LMRA has been shown not to depend on whether or not the NLRA and NLRB have jurisdiction over a claim. In deciding a case where there was both an issue of what constituted a "contract" under §301, as well as if the union had to be the "exclusively recognized union" within the meaning of the NLRA, for purposes of §301 jurisdiction, the Court found: "Had Congress thought that there was any merit in limiting federal jurisdiction to suits on contracts with exclusive bargaining agents, we might have expected Congress explicitly so to provide, for example, by enacting that §301 should be read with §9(a) [the provision of the NLRA having to do with ]." Retail Clerks International Association v. Lion Dry Goods, Inc., 7 L.Ed. 2d 503, 511 (1962). Prior to Retail Clerks Congress did not limit a §301 cause of action to one specifically linked to

4

the NLRA's jurisdiction. And nor has Congress done so subsequently. As such, Petitioner in <u>Retail Clerks</u> and BATA here, could proceed in federal court under a §301(a) claim, because the Court determined that NLRB jurisdiction was not a requirement. Irrespective of whether or not the NLRB would have jurisdiction over this case, this court, pursuant to §301(a) and (b), does.

    C. Plaintiff is proceeding under the appropriate Statute, the LMRA.

Defendants try to buttress their argument by claiming Plaintiff is "cherry picking" statutes to find "an island of jurisdiction untouched by the waters of the surrounding national labor law." Defendants' Motion at 3. While Plaintiffs appreciate the poetical nature of the assertion, it is, unpoetically, wrong. Plaintiff has jurisdiction to bring this claim under the LMRA, as shown above. And Plaintiff is not legislatively "cherry picking," but rather, bringing the case under the appropriate statute. Further, Plaintiff is not, and has not, claimed, nor could it, that this case is beyond the reach of the "waters of surrounding national labor law," but instead is simply arguing that this court has, owing to the plain language of the LMRA, jurisdiction to hear this case. That is all that is at issue in the present Motion. In the tempestuous seas of labor relations, BATA is merely availing itself of this court's port of jurisdiction pursuant to the LMRA; it is not alleging, to mix the metaphor, that it has found the Shangri-La of labor law, where no other law applies.

There is both a distinction and a difference between the NLRA and the LMRA, as hard as defendants try to blur and then limn the two into one. The easy distinction between the two, to point out the obvious, is that they are two separate congressional enactments. They are not duplicative, or redundant. They have separate

purposes, meanings, and language. The telling difference between the two for purposes of this case is between jurisdiction and definition. Here, §301 of the LMRA confers jurisdiction to hear this case, while the NLRA, at times, defines some of the applicable terms in §301. In other words, some of the definitions contained in the NLRA were imported into the later LMRA, but the jurisdictional requirements in the LMRA are wholly its own and do not bow to, or reference, the NLRA. So while there is some overlap in terms of definitions, each one contains its own jurisdictional requirements. By conflating the definitional and jurisdictional sections of the LMRA and the NLRA, defendants have created problems where none exist. The LMRA confers jurisdiction in the present case.

The Defendants are asking this Court to engage in statutory shadow chasing. Instead of challenging Plaintiff's reliance on the LMRA, they eschew the LMRA for the NLRA to try to defeat jurisdiction. Occam's law loosely translated states, "do not presume more things to exist than absolutely necessary.[1]" And euphemistically it means, the simplest answer is usually correct. Here, Plaintiff asserts it is granted jurisdiction in this court by the LMRA as it has met all the criteria. Simple and factual and facial. Meanwhile, Defendants backward somersault from the LMRA to the NLRA to the NLRB to <u>Catholic Bishops</u> and finally to some inchoate concerns. Convoluted and careening and unsupportable. The LMRA on its face confers jurisdiction and Defendants' Motion should be denied.

D.     <u>Catholic Bishop</u> Is Wholly Inapplicable To The Present Case.

---

[1] "Entia non sunt multiplicanda praeter necessitatem."

NLRB v. Catholic Bishop of Chicago dealt exclusively with Congress' jurisdictional grant to the National Labor Relations Board under the National Labor Relations Act. 440 U.S. 490 (1979). It did not address the statute under which BATA is proceeding, the LMRA. It did not address BATA's issue in this case, instead addressing whether the NLRA conferred jurisdiction over previously unorganized educational religious institutions for representation elections to the NLRB. It did not address the federal district courts' jurisdiction to hear breach of contract claims under the LMRA. It did not address a situation where there was already pre-existing "recognition" of the union. It did not address a situation where there was already a contract. It did not, in any respect, address the substantive legal and factual inquiries germane to this case. As such, Catholic Bishop is inapplicable in this case. And as such, Defendants had to resort to legislative history to try to make its case.

Defendants fall prey to the fallacy that legislative history alone proves a case. Legislative history has, quite appropriately, been likened to looking out at a gargantuan crowd and picking out the one person you know who also happens to be waving to you. In addressing how Catholic Bishop addressed the LMRA, Defendants assert that the Court "specifically referenced the LMRA" as the Court noted the progression of labor law through the 20th century. While they are correct, the Court did "specifically reference the LMRA", just how the Court addressed the LMRA, with total a total of three sentences, comprised of 80 words, in a twenty page decision, is worth quoting in full:

> "Congress' next major consideration of the jurisdiction of the Board came during the passage of the Labor Management Relations Act of 1947- the Taft-Hartley Act. In that Act Congress amended the definition of 'employer' in §2 of the original Act to exclude nonprofit hospitals. . . . There was some discussion of the scope of the Board's jurisdiction but the consequence was that

7

nonprofit institutions in general did not fall within the Board's jurisdiction because they did not affect commerce." (Internal citations omitted).

That is the totality of the discussion concerning the LMRA in Catholic Bishop. There is nothing germane to the Court's present inquiry. (Note that the Court was concerned with the "Board's jurisdiction." This is not at issue in the present case.

As was shown in the Catholic Bishop dissent by Justice Brennan, exclusion from coverage of the Act being sought by religious institutions was expressed by Representative Hartley in 1947 during the LMRA amendment process. His Bill, the Hartley Bill, HR3020, 80th Congress, 1st session, (April 18, 1947) passed the House of Representatives, but failed to become law. It read in pertinent part, "The term 'employer' ... shall not include ... any corporation, community chest, fund, or foundation organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes ... no part of the net earnings of which inures to the benefit of any private shareholder or individual ...." Catholic Bishop, at 513 (Brennan Dissenting).

Thus, it is clear that at least for LMRA jurisdictional purposes, Congress affirmatively contemplated exempting religious institutions, such as those involved in the present dispute, from coverage of the LMRA through Representative Hartley's Bill. The Hartley Bill passed the House, but did not become law. This demonstrates a clear, unequivocal, and affirmative act on Congress' part, for LMRA jurisdictional purposes, to include these religious institutions within coverage[2].

---

[2] It should be noted that the Catholic Bishop decision created not only a new statutory construction method, but also re-wrote the clear history of the NLRB's jurisdiction since the passage of the NLRA through the passage of the LMRA. "Section 2(2) of that Act [NLRA], identical in all relevant respects to the current section, excluded from its coverage neither church-operated schools nor any other private nonprofit organization. Accordingly, in applying that Act, the National Labor Relations Board did not recognize

8

E.  Defendants' 12(b)(1) must fail as the LMRA grants jurisdiction.

In their 12(b)(1) claim Defendants confuse by conflation. Defendants assert that F.R.C.P. 12(b)(1) compels dismissal because the National Labor Relations Act does not "bring teachers in church-operated schools within the jurisdiction of the National Labor Relations Board." (Motion to Dismiss, pg. 2). But that is not the salient inquiry for district court jurisdictional purposes. The NLRB's jurisdiction has no bearing on a federal district court's jurisdiction to hear an LMRA claim. "Subject matter jurisdiction in federal-question cases is sometimes erroneously conflated with a plaintiff's need and ability to prove the defendant bound by the federal law asserted as the predicate for relief- a merits related determination." EEOC v. St. Francis Xavier Parochial School, 117 F.3d 621 (D.C. Cir. 1997) quoting 2 Moore's Federal Practice §12.30[1] (3d ed. 1997). That is what the Defendants are doing here.

Again, for jurisdictional purposes, §301 of the Act requires there be an employer, a union, and collective bargaining agreement, and that there is a claim for breach of the same. None of these constituent elements are contested in this case. As alleged in the Complaint, and uncontested in the Motion to Dismiss, BATA is the recognized representative of a bargaining unit comprised of all lay teachers and guidance counselors

---

an exception for nonprofit employers, even when religiously associated. An argument for an implied nonprofit exemption was rejected because the design of the Act was as clear then as it is now: '[n]either charitable institutions nor their employees are exempted from operation of the Act by its terms, although certain other employers and employees are exempted.' ... both the lowers courts and this Court concurred in the board's construction." Catholic Bishop at 512 (Brennan dissent) (citation omitted).

Justice Brennan noted the line of cases wherein the NLRA had been found to have jurisdiction over just such non-profit private religious institutions. See, Id. at 512, fn. 4. Aside from the jurisdictional issue, the other issue these cases make clear, is that these types of employers fit the definition of what constitutes an "employer affecting commerce" under the NLRA. As that definition is equally applicable to the LMRA, it is obviously sufficient for present purposes.

at the 8 catholic high schools. The current employer, again uncontested in the Motion to dismiss, is the Archdiocesan Central High Schools, Inc., which runs those same 8 schools. Also uncontested in the Motion to Dismiss, the parties have had successive collectively bargained agreements for 38 years, and do so at the present. Contrary to their contractual obligations as alter egos and or successors the eight new corporations have expressed an intent not to recognize BATA, to disregard the existing CBA, and to deny employees the benefits of the CBA. Here, it is undeniable that there is a valid collective bargaining agreement between the parties, and there is a claim for breach of the contract. LMRA, §301, confers jurisdiction on this Court to hear, decide, and, if necessary, fashion a remedy for such breach.

Defendants fall squarely within coverage of the Act because they are "employers engaged in commerce" within the meaning of the Act. (Indeed, tellingly, they never assert they are not.) Plaintiff BATA likewise is covered under the Act as a labor organization. BATA alleged that ACHS, Inc., and its eight ostensible spin-off schools are alter egos (which will be dealt with more fully *infra*), are employers within the meaning of the Act. BATA alleged the defendants are all employers engaged in commerce within the meaning of the Act. Finally, this case involves the interpretation of a collective bargaining agreement. That is all that necessary for this Court to assert jurisdiction.

Defendants' version of legislative history and statutory construction for 12(b)(1) purposes is wholly misplaced and unsupported historically.

F.     The 12(b)(6) claim similarly must fail.

For Defendants to succeed under 12(b)(6), they must show "beyond doubt that the plaintiff can prove no set of facts in support of [its] claim which would entitle [it] to relief." Conley v. Gibson, 355 U.S. 41 (1957). The Court may consider only the facts alleged in the complaint, and must accept Plaintiff's factual allegations as true. Albright v. Oliver, 510 U.S. 266 (1994). Additionally, this Court must draw all inferences in Plaintiff's favor in making such a determination. Scheuer v. Rhodes, 416 U.S. 232 (1974).

BATA, in its complaint, alleged it is a labor organization within the meaning of the LMRA. BATA alleged that it and ACHS, Inc., have been parties to successive collective bargaining agreements, including presently. BATA alleged that ACHS, Inc., and its eight ostensible spin-off schools are alter egos, are an employer within the meaning of the Act. BATA alleged the defendants are all employers engaged in commerce within the meaning of the Act. With those pleaded factual allegations taken as true, as they must be, Defendants' 12(b)(6) claim must fail as those allegations establish a ground upon which this court may enter relief in its favor.

Owing to the well-pleaded complaint filed by Plaintiff, this Court may order the Defendants to adhere to their contractual obligations, as well as remedy the violations that have already occurred. Further, it may find that the eight purportedly new schools are alter egos of ACHS, Inc., and thus find they are bound to the contract as well. Simply put, Plaintiff has alleged sufficiently specific facts to support this court exercising jurisdiction and then remedy the contract violations.

As grounds for its argument that Plaintiff's case be dismissed on 12(b)(6) grounds Defendants state:

11

> "[t]he United States Supreme Court addressed very directly the question that is truly at the core of the instant case. Specifically, in NLRB v. The Catholic Bishop of Chicago, et al., 440 U.S. 490 (1979), the Court held that in view of the fact that the exercise of jurisdiction by the National Labor Relations Board over teachers in church-operated schools would implicate the guarantees of the religion clauses of the First Amendment and in view of the absence of a clear expression of Congress' intent to bring teachers in church –operated schools within the jurisdiction of the Board, the National Labor Relations Act did not authorize the Board to exercise jurisdiction over the lay faculty members at the church-operated schools. (Defendants' Motion to Dismiss, pg. 3).

Unfortunately for Defendants that is neither the "question that is truly at the core of the instant case" nor the holding of <u>NLRB v. Catholic Bishop</u>. Wholly dissimilar to the question posed in <u>Catholic Bishop</u>, this Court is not being asked to determine whether the National Labor Relations Board may assert jurisdiction over, and require a religious institution to recognize and bargain with a new union. Instead, the Court is being asked to determine if an employer with a 38 year bargaining history and the new corporations it tightly controls have violated the contract signed with the association representing their employees. This is a case where, for 38 years, the employer recognized, bargained with, and signed successive contracts with the association, and now has breached that contract and, in the guise of eight supposedly independent corporations, wants to eschew its obligations under the contract and federal labor laws. This, unlike <u>Catholic Bishop</u>, is not a battle concerning "recognition", but instead over contract violations arising from a pre-existing contract.

As Defendants went to great pains to show in its Motion, the Supreme Court was concerned fundamentally with the conclusion "that Congress did not contemplate that the **Board** would **require** church-operated schools **to grant recognition to unions** as bargaining agents for their teachers." (Defendants Motion to Dismiss, pg. 4, quoting <u>Catholic Bishop</u> at 506) (emphasis added). That was what <u>Catholic Bishop</u> was about–

12

whether the NLRB's jurisdiction gave it power to order "recognition." But it is not what the present case is about. The explicit concern of **requiring** a church-operated school to "grant recognition" is non-existent in this case. Instead, Defendants have willingly recognized BATA and thus assumed the obligation to comply with the law. The concern of the Catholic Bishop Court that religious employers would be involuntarily cloaked by federal labor law is non-existent. Rather, the defendant religious institutions here have willingly wrapped themselves in the cloth of federal labor law by, and in accord with its faith and principles, willingly recognizing BATA. Even overlooking the fact that it was the employer which recognized BATA, not a court, not the NLRB, not a state labor relation commission, but the employer itself, they should not now, almost 40 years later, be heard to complain about recognition of BATA. They signed the contract and they, like the union, are bound by it.

> G.  This Court Has Jurisdiction Over The Eight Newly Incorporated Schools Because They Are Alter Egos Of ACHS, Inc.

Plaintiff in its complaint has made factual allegations with sufficient specificity for this Court to conclude, or infer, that the eight newly incorporated schools are alter egos of the signatory, ACHS, Inc. and thus to bind them to the contract. Massachusetts Carpenters Central Collection Agency v. Belmont Concrete Corporation, 139 F.3d. 304 (1st. Cir. 1998) and Civil Action No. 95-10491- DPW (D. Mass. Sept. 30, 1997). In a §301 case brought against signatory and nonsignatory defendants the court stated, "finding that two employers are alter egos will bind the nonsignatory to a collective bargaining agreement between the union and the nonsignatory's alter ego." Massachusetts Carpenters at 307. While Defendants, in response to this well pleaded complaint, again blur and conflate the applicable law, the law itself is clear:

The First Circuit examines several factors in determining whether a non-signatory is an alter ego: anti-union animus and substantial identity of management, business purpose, operation, equipment, customers, supervision and ownership. No single factor in this analysis is controlling and all need not be present in order for the court to find alter ego status exists. Specifically, the First Circuit has held that wrongful motive—i.e., anti-union animus—is not required under the alter ego doctrine." Massachusetts Carpenters at 18 (District Court opinion).

Plaintiff has alleged sufficient facts for this Court to find alter ego status exists. It has pled that there exists between ACHS, Inc., and the eight new corporations substantial similarity in management as the officers are almost identical, similarity in business purpose as they will continue to provide the same services to the same customers, similar operations as the rules and regulations between the eight schools and ACHS, Inc., are substantially similar, they will share substantially the same employees, and the supervision will not change as Archbishop Sean P. O'Malley will retain all final authority for the eight new schools. Although that is not the totality of the allegations in the complaint, it is more than sufficient for present purposes.

Further, "[c]ontinuity of ownership may be the most important factor in an alter ego analysis." *Id.* at 18, 19. Here, there is absolute continuity of ownership as the property is now owned by the Archdiocese of Boston and merely leased to the eight new schools and will revert back to the Archdiocese of Boston, according to the Articles of Incorporation filed with the Secretary of State. The eight new independent schools do not have the power to control the sale of the buildings or the land. Further, the ultimate authority presently for ACHS, Inc., is Archbishop O'Malley. For the eight new schools it is Archbishop O'Malley. There is absolute continuity in ownership among all the enterprises.

H. Supreme Court and First Circuit case law is clear- nonsignatories to collective bargaining agreements may be brought within the jurisdiction of federal court if they are alter egos of a signatory.

As was shown in section G above, the eight new schools are alter egos of ACHS, Inc., and thus this court has jurisdiction over them. In Wiley & Sons v. Livingston, a §301 suit similar to the present case for alter ego jurisdiction purposes, the question before the Supreme Court was: "whether a [non-signatory] corporate employer must arbitrate with a union under a bargaining agreement between the union and another [now dissolved] corporation." Wiley & Sons v. Livingston, 376 U.S. 543, 544 (1964). The Supreme Court held, "that the disappearance by merger of a corporate employer which has entered into a collective bargaining agreement with a union does not automatically terminate all rights of employees covered by the agreement.... While the principles of law governing ordinary contracts would not bind to a contract an unconsenting successor to a contracting party, a collective bargaining agreement is not an ordinary contract." *Id.* at 548. The unanimous Court held "the successor [non-signatory] employer may be required to arbitrate with the union under the agreement." *Id.*

For jurisdictional purposes it is quite clear that there was no concern that Wiley could not proceed under §301 of the LMRA in federal court, even in the face of the fact that the Defendant was not a signatory to the collective bargaining agreement. Similarly here, as the eight new corporations share with ACHS, Inc., a substantial corporate identity, addresses, product, locations, officers, etc..., they easily fall within the criteria necessary for a finding of alter ego status, or successorship, and thus this court has jurisdiction.

15

Defendants refer to a few alter ego cases in its Motion. But in the face of Supreme Court decisions such as <u>Wiley</u> and First Circuit cases such as <u>Massachusetts Carpenters</u>, it is obvious these eight Defendants are appropriately within the reach of this court. Defendants' cited cases mainly involved Plaintiffs' failure to allege sufficient facts to support an alter ego status finding by the Court. In this case, unlike the cases referred to in Defendants' Motion, Plaintiff has made copious factual allegations to support its alter ego claim. And further, the Supreme Court and this Circuit have found such an exercise of jurisdiction to be permissible.

Plaintiff has pled with sufficient specificity all the necessary components to sustain an alter ego finding by this Court, and this Court is empowered to redress that wrong[3]. Taking plaintiff's allegations as true, this court must assert jurisdiction over these eight Defendants. This Court should deny Defendants' Motion to Dismiss as it pertains to the eight newly incorporated schools.

I. ACHS, Inc., And BATA's Actual Experiences Should Estop Any <u>Catholic Bishop</u> Entanglement Concerns.

---

[3] Plaintiff notes in passing the argument made by Defendants concerning the alter ego doctrine and, what they seem to allege, is essentially a purposefulness requirement on the part of Defendants to avoid the Act. Defendants contend that alter egos must be set up to "avoid" the mandates of the Act (the NLRA, not the LMRA). And since, the argument proceeds, the NLRA is inapplicable to these defendants, these defendants must lack the requisite intent to undermine the Act. Like all well constructed tautologies, this one by Defendants is internally consistent. But legally and factually it is wrong. Neither this Circuit, nor any other has exclusively held that to establish an alter ego a party has to be cognizant of the Act, and then willfully decide, through the construction of a separate enterprise, to avoid its mandates. In fact, in this Circuit, there is no requirement that the Plaintiff prove anti-union animus as a pre-condition to finding alter ego status- thus recognizing that actions speak louder than intentions. <u>Massachusetts Carpenters</u>, at 308. Parties set up different ventures, among other reasons, to avoid union contracts or labor agreements- usually not congressional enactments.

Catholic Bishop specifically articulated areas of concern around recognition of the union and bargaining over terms and conditions of employment. Simply put, these concerns are not are relevant here. BATA has been recognized for 38 years. The bargaining unit is well established and not an area of controversy. The terms and conditions of employment have been addressed repeatedly throughout the parties' 38 year bargaining history.

This, in essence, is a simple labor contract case, no matter how many shibboleths the Defendants attempt to throw up. The parties signed a contract, a collective bargaining agreement. BATA maintains the Defendants breached that contract and now the Defendants are attempting, under the ruse of inapplicable Supreme Court law, and inapplicable first amendment concerns, to shirk its obligations under the contract. This Court has jurisdiction to hear these claims because these Defendants, consonant with their purported beliefs, brought themselves within the ambit of federal labor laws 38 years ago and continuing, by recognizing, bargaining, and signing contracts with the exclusive bargaining representative of all lay teachers employed at the eight schools.

The Act is not being foisted upon Defendants in contravention of its first amendment rights. There is a difference between being acted upon and affirmatively acting, and here, that difference is dispostive. The defendants have squarely brought themselves under the coverage of the Act. Although perhaps not required to recognize the union, once it plunged into the waters of collective bargaining with BATA, it forfeited any claim to insulation from federal labor laws, at least with respect to enforcement of that contract.

J. Defendants 12(b)(2) and (3) claims must fail.

17

Defendants assert that because this Court lacks subject matter jurisdiction it also lacks personal jurisdiction and is an improper venue. BATA asserts that both these claims must fail. As Defendants argue these grounds wholly derivative to its argument that there is no subject matter jurisdiction, BATA will rely on the arguments made above establishing this Court's jurisdiction. BATA has articulated numerous reasons for this court to hold it has subject matter jurisdiction. For those same reasons, BATA asks the court find subject matter jurisdiction, personal jurisdiction, and venue all proper here.

In response to Defendants' assertion, "[m]oreover, because of the potential for involvement of canon law in this case, personal jurisdiction may be implicated." Clearly, this court has personal jurisdiction over Massachusetts corporations. BATA can only respond further by saying that without explanation of how canon law may "implicate" personal jurisdiction in this matter, it cannot respond beyond reasserting the fact of corporate status of each of the Defendants in Massachusetts. Defendants' Motion, pg. 19.

K.   The State law claims

Federal courts have discretion whether or not to exercise jurisdiction over remaining state law based claims when all other claims are dismissed. Assuming arguendo that this court does dismiss Counts I-III, it should still assert jurisdiction over the remaining state law based tortious interference claim, Count IV. Plaintiff asks this court to exercise its discretion for the sake of judicial economy, expediency, and even-handedness.

This Court has already, through the Complaint, an Answer, the Motion to Dismiss, and this Opposition to the Motion to Dismiss, been appraised of the core issues in this case, as well as the law and facts underlying them. It would require the exact same

filings in state court to bring another court up to speed. Second, the parties in this case desire rapid resolution, and by exercising jurisdiction over the state law claims, this case will be decided much sooner. Third, federal courts are very experienced in contract and labor law matters owing to federal pre-emption and the establishment of a uniform federal labor policy. While BATA recognizes Count IV is a state law claim, it urges this Court to exercise jurisdiction because of its knowledge in this field.

Additionally, the state law claim itself may fall under the federal preemption doctrine as it deals with a collective bargaining agreement, so the case may well come back to this court after a brief hiatus in state court. This possibility should be short-circuited by this court asserting jurisdiction.

For all these reasons, Plaintiffs ask that in the untoward event that it dismisses Counts I-III, it exercise jurisdiction over Count IV.

### III. CONCLUSION

ACHS, Inc., signed a contract with BATA. BATA alleges ACHS, Inc., has breached that contract and also set up alter ego corporations. BATA is seeking to remedy the breaches that have already occurred and ensure, going forward, that these alter egos and or successors be bound by the same contract as ACHS, Inc. After 38 years of continuous and successive collective bargaining agreements, these Defendants should not be allowed to turn their back on explicit contractual promises made to the lay professionals who work in these schools. And the law should not, and, in fact, does not, allow them to do just that.

For all the foregoing reasons, Plaintiff asks this Court deny Defendants' Motion to Dismiss.

Respectfully Submitted for BATA,
By its Attorneys,

_____
Terence P. Noonan  BBO# 648712
Kathryn M. Noonan BBO# 373340
Law Office of Kathryn M. Noonan
1150 Walnut Street
Newton, MA 02461
(617) 969-4518

Dated: August 6, 2004

**CERTIFICATE OF SERVICE**
I hereby certify that a true copy of the above document was served upon the attorney of record for each other party by mail-hand on _____